# Bradley *versus* O'Donnell and Storm.

*Conditional Verdict in Ejectment.—Effect of on "Right to Possession" and Costs after Non-performance of Condition.*

1. A judgment for plaintiff on a conditional verdict in ejectment is for costs as well as for the land, and if it become absolute, the plaintiff is entitled to delivery of the land as well as process for costs.

2. Where it was agreed by the conditional verdict in an action of ejectment, brought to compel payment of the balance of purchase-money due under articles of agreement, that on failure to make payment on the times fixed, the land should be sold under the direction of the court, and the money raised applied to the payment of the amount due, and the land was so sold, upon such failure, for less than the balance due, to the plaintiff, the purchaser, who still held the legal title to the land, he was entitled to a writ of *habere facias possessionem* and *fieri facias* for costs; for the effect of the agreement was the same, as to the costs, as if the property had been delivered in the ejectment for non-performance of the conditions of the verdict.

Error to the Common Pleas of *Cambria county.*

This was an action of ejectment, brought to September Term 1857, by William Bradley, against Hugh O'Donnell and Francis A. Storm, for a lot of ground in Washington township.

On the 12th August 1857, William Bradley instituted an equitable action of ejectment in the court below, against Hugh O'Donnell, for about one acre of ground, to enforce payment of

[Bradley *v.* O'Donnell and Storm.]

purchase-money; on the 6th of March 1858, obtained judgment by default of appearance, and on the 30th March 1858, issued a writ of *hab. fa. poss.* and *fi. fa.* for costs. Subsequently Francis A. Storm, who had become the purchaser at sheriff's sale of the interest of O'Donnell in the ground for which the action was brought, on a judgment given for a part of the purchase-money, moved the court to strike off the judgment, and admit him to be made a co-defendant in the action, and defend, which was accordingly done. On the trial the plaintiff gave in evidence the agreement between himself and O'Donnell. Its terms were, that O'Donnell was to pay, in consideration of the land, $225; $25 in hand, and the residue in four payments, which should be equal as to time and amount, within two years from the date of the agreement, at which time Bradley was to make unto O'Donnell a good and sufficient deed. The evidence in the case further showed, that Bradley, after the date of the agreement, took two judgment notes, or single bills of O'Donnell, for $100 each, and assigned one of them to Francis A. Storm, who caused judgment to be entered thereon, issued, levied, sold the property, and became the purchaser. The other of said notes Bradley had entered up, having received $45 on it. Upon the trial of the case in the court below, a verdict and judgment was had in favour of the defendants. A writ of error was taken by the plaintiff, and this court reversed the judgment, and awarded a *venire de novo.* When the case again came up for trial, by agreement of counsel, judgment was confessed to the plaintiff for the land described in the writ, to be released on payment of $70.25, with interest; one half on the 1st October 1859, and the other half on 1st December 1859. And it was agreed, that on failure to make either of said payments, the land should be sold under the direction of the court. The defendants not having paid the amount due 1st October 1859, the plaintiff obtained an order of the court for the sale of the premises, and the sheriff of the county was appointed to make the sale. To this order the sheriff made return, that on the 11th February 1860, he had sold the property to William Bradley, the plaintiff, for $55, which sale was, on the 9th day of January 1861, confirmed by the court *nunc pro tunc.* No deed for the property was executed and delivered by the sheriff to Bradley, nor did he pay to the sheriff the amount of his bid.

On the 20th of June 1860, Bradley obtained a rule to show cause why a *habere facias possess.* and a *fi. fa.* for costs should not issue, which rule was on the 10th of January 1861 discharged by the court. The case was thereupon removed into this court, where the judgment of the court below in discharging the rule was assigned for error.

*R. L. Johnston,* for plaintiff in error.—That the sheriff, who

[Bradley v. O'Donnell and Storm.]

was trustee in making the sale, had not delivered a deed to Bradley, was no reason for discharging his rule, because the legal title remained in Bradley, he having never parted with it. Nor was the rule objectionable because it included a *fi. fa.* for costs, because costs always follow the judgment, and ejectment being in *tort* the defendant could not plead any exemption law in favour of his person or his property. The case of Hewitt *v.* Huling, 1 Jones 34, does not change the general rule under which costs follow a judgment in ejectment, but if it does so, the court would modify it.

Here the plaintiff had a right at a certain time, in default of payment, to possession of the land, and a writ for his costs. The defendant claimed a privilege suggested in Hewitt *v.* Huling, and adopted by the court below as a rule of practice. The plaintiff's case was then gained, and his right to costs fixed. Was the sale for the benefit of the defendant to be an experiment at the expense of the plaintiff? If it had produced more than debt and costs, defendant would have taken the surplus, but as it did not pay the debt, why should he not be bound for costs which had accrued before the sale was ordered? That Bradley was the purchaser can make no difference, for the sale was open and public.

The custom of paying costs of public sales before paying the principal does not apply to this case, and the attempt to make a successful party pay the costs of the one who was unsuccessful, should not be sanctioned.

*Wm. Kittell*, for defendant in error.—The application for the writs of *hab. facias* and *fi. fa.* was premature, no deed for the equitable title having been delivered, nor any portion of the purchase-money paid, without which the sale is not perfected. Bradley stands in the same position with regard to it as a stranger. The mere fact of its being knocked off to him, gave him no right of possession. Besides, the sale had not been confirmed when the rule was taken. Admitting his right to the *habere facias*, he had none to a writ for collecting the costs. The agreement that the land should be sold changed the old practice, and placed the case on an entirely different footing. It is not distinguishable from Purviance *v.* Lemmon, 16 S. & R. 292; Chew *v.* Mather, 1 Penna. R. 474; Day *v.* Lowrie, 5 Watts 412; Huston *v.* Davidson, 8 W. & S. 181, which rule that where a vendor who retains the legal title to land and sues out a bond given for the purchase-money, or sells upon a judgment in covenant upon articles of agreement, and purchases at sheriff's sale the vendee's equitable interest, dissolves the contract of sale, and works a satisfaction of the personal remedy against the vendee.

In all judicial sales the costs are paid out of the proceeds of

4 Wr.—31

[Bradley *v.* O'Donnell and Storm.]

sale. By the rule contended for by the plaintiff in error, he will receive the land again, with all the purchase-money paid on account; and beside this, collect his costs of the defendant, which is contrary to law and equity. Bradley should have paid the amount of his bid, and have the money brought into court for distribution, where this question as to costs could have been properly settled.

The opinion of the court was delivered, November 25th 1861, by

THOMPSON, J.—When the plaintiff obtained judgment on his conditional verdict in ejectment, it was a judgment for costs, as well as land, and in event of the judgment becoming absolute, he would have been entitled to a delivery of the land and process for costs. This is the plain course in cases of this kind. But it was agreed, as appears by the record, that on failure to make payment at the times fixed by the conditional verdict, the land should be sold under the directions of the court, and the money thus raised applied to the payment of the purchase-money. If anything beyond this was realized, it would go to the vendee. This gave a double advantage to the vendee; the opportunity to pay by the day, and the advantage in the advance of the property, if he was not able to pay. And now it is contended, that in addition to this it gave the vendee the advantage also of getting clear of the costs of the judgment in the ejectment, the vendor being obliged to bid on the land in order that he might not lose both land and money. This would be very inequitable surely. We look upon all this but as a mode of restoring possession to the plaintiff under the judgment. No deed to him was absolutely necessary, for he held the legal title all the time. We regard the effect to be just the same, at least so far as the costs are concerned, as if the property had been delivered in the ejectment for non-performance of the conditions of the verdict. That would have extinguished the purchase-money, but not the costs. · This is not a question on distribution of proceeds of sale, but simply of liability for costs, and there is no law which can be cited, which will deprive the plaintiff of his execution for costs.

> The order of the court overruling the motion for leave to issue a *fi. fa.* for costs reversed, and *procedendo* awarded.